HENRY POLLAK, INC. *v.* UNITED STATES (No. 3731)[1]

[1] T. D. 47066.

United States Court of Customs and Patent Appeals, April 23, 1934

*A. H. Goodman* (*Edward P. Sharretts* of counsel) for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument April 3, 1934, by Mr. Sharretts and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges [2]

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the classification of certain articles imported from Italy at the port of New York. Said merchandise was described by the collector as wool-felt hat bodies and classified as articles of wearing apparel, manufactured wholly or in part, composed wholly or in chief value of wool, and assessed with duty under the provisions of paragraph 1115 of the Tariff Act of 1922. Appellant claimed that the merchandise was properly dutiable at 50 per centum ad valorem under paragraph 1119. Appellant made other claims in the alternative, which claims are not here relied upon and which will not be considered by us.

The competing paragraphs read as follows:

PAR. 1115. Clothing and articles of wearing apparel of every description, not knit or crocheted, manufactured wholly or in part, composed wholly or in chief value of wool, valued at not more than $2 per pound, 24 cents per pound and 40 per centum ad valorem; valued at more than $2 but not more than $4 per pound, 30 cents per pound and 45 per centum ad valorem; valued at more than $4 per pound, 45 cents per pound and 50 per centum ad valorem.

PAR. 1119. All manufactures not specially provided for, wholly or in chief value of wool, 50 per centum ad valorem.

The merchandise here involved is conceded to be identical with that which was considered by this court in the case of *Henry Pollak, (Inc.) v. United States*, 19 C.C.P.A. (Customs) 215, T.D. 45324, hereinafter referred to as the prior case, and the record in said case was incorporated in the record of the present case and is before us. In addition to the record in said prior case, appellant introduced the testimony of three witnesses, none of whom testified in the prior case. The testimony of these witnesses will be adverted to later.

There was also introduced in evidence in the instant case a sample of the imported merchandise, designated as Exhibit 1, and also Exhibit ZZ, which consists of some artificial flowers.

The Customs Court overruled appellant's protest, holding that our decision in the prior case was controlling of the issue here, notwithstanding the new testimony introduced.

---

[2] Hatfield, J., did not participate in this case.

The sample of the imported merchandise, designated Exhibit 1, is conceded to be typical of the imported articles. It appears from the record that this sample is the identical wool body which constituted Exhibit 1 in the prior case. In our opinion in said prior case this sample was described as follows:

Exhibit 1 is agreed to be typical of the merchandise. It consists of a felt body, composed in chief value of wool, which has been wrought into a somewhat conical shape or form, bearing much resemblance to the shape or form of ladies' finished woolen hats.

In the prior case the issue was precisely the same as is here involved, and in that case this court affirmed the judgment of the lower court and held the articles to be properly classifiable under said paragraph 1115. It is appellant's contention that the record now presented for our consideration furnishes a basis for a reversal of our previous holding upon the issue thus presented. Appellant further requests a reconsideration by us of our views expressed in the prior case.

In our opinion in the prior case we found that the merchandise involved was the result of nine distinct manufacturing operations upon the raw material, viz, carding, which forms the shape on cones, hardening the body, hardening the tip, shrinking or folding the body, further folding of the wool bodies and a tightening of the felt, dyeing or coloring, stretching the tip, a pulling process, and pouncing. In urther discussing the wool bodies, we said:

The evidence establishes the fact that the merchandise is brought to the form in which imported by the use of a machine specially constructed for that purpose and in universal use for making wool hat bodies. The testimony further establishes that at least some of the steps described by Mr. Sargent are necessary to be had in advancing the article, beyond the condition as imported, to the finished-hat stage whether the article be finally used for making a hat or for one of the other purposes, but these additional steps are not shown necessarily to include shaping where the article is for other than hat use.

From the testimony in the case it seems obvious that the articles as imported are hat shapes and are designed and manufactured for the making of women's hats.   *   *   *

We then proceeded to find that, while there were substantial uses of the merchandise, other than in the manufacture of hats, by reason of the facts last above quoted the merchandise was properly classified by the collector.

We will first consider the new testimony introduced in the case at bar. The president of the foreign manufacturing company testified upon behalf of appellant and described the process of manufacturing the merchandise here involved as follows:

We purchase the wool in bales. The wool is then passed into cleansing machinery. It is then carbonized to detract any vegetable parts from it. After that the acids are removed—the acids which were put in for the carbonization of the wool. It is then passed through a machine which will so dispose the fibers of this wool as to produce a certain felting. After that it is passed to a carding machine.

After that it is passed to the double, conical shaped machine, if one wishes to obtain a double conical shape similar to that article, to Exhibit 1; otherwise it will be passed to a machine to manufacture the flat surface felt. It is then passed to a machine which renders this felt flatter—compresses it. If the shape required is this, that of Exhibit 1, it is then put in a machine that will give that shape, through warm water containing a small percentage of sulphuric acid. If instead a flat surface is required, it is passed through an appropriate machine which will make it flat and felt it at the same time. It is then passed through a dyeing process. It is then repassed to machines which continue the felting process. According to the shape of the article required it is then passed through machines which will pull it lengthwise as well as in the height. They are then allowed to dry. They are then passed through sanding machines to be smoothed. That is all.

He further testified that the merchandise had uses other than in the making of hats, which we found as a fact in the prior case.

Another witness on behalf of appellant was a manufacturer of artificial flowers and novelties. He testified that he manufactured artificial flowers out of merchandise like said Exhibit 1, and that it was advantageous to use the material in that form, giving his reasons therefor.

The third witness for appellant was a customhouse examiner, who merely identified Exhibit 1 as correctly representing the merchandise here involved.

The Government introduced the testimony of three witnesses, which testimony was of the same general character as the testimony on behalf of the Government in the prior case.

We have carefully considered all of the new testimony introduced in the case at bar, and find no reason to modify our conclusions reached in the prior case upon questions of fact. With respect to the questions of law decided in the prior case, we are of the opinion that they were correctly decided, and we reaffirm them here.

Appellant's counsel here relies upon the case of *Tide Water Oil Co.* v. *United States*, 171 U.S. 210, not cited in the prior case, to support his contention that the merchandise here in question should not be regarded as partly manufactured hats, but only as material for the manufacture of hats and other articles.

We have carefully considered said case and find nothing therein which leads us to depart from the conclusion reached by us in the prior case. In the *Tidewater* case the court described a partial manufacture as "a mere stage in the development of the material toward an ultimate and predestined product", and we think the merchandise here involved is of that character.

We stated in the prior case that, if the merchandise was in fact designed, manufactured and shaped for the purpose of making hats, and was dedicated to that use at the time of importation, it is wearing apparel manufactured in part. We reaffirm this statement with the possible qualification (understood, we think, from our former

opinion), that each of the imported articles was manufactured and shaped for the purpose of making a hat and dedicated to that purpose, thus distinguishing this case from the case of *United States* v. *Harding Co.*, 21 C.C.P.A. (Customs) 307, T.D. 46830, where we held that certain so-called "brake linings" imported in lengths of 100 feet, not cut or drilled or marked for use as a brake lining, were not classifiable as parts of automobiles but were merely material for use as brake linings, and classifiable as manufactures of asbestos.

The issue involved in the case of *United States* v. *J. A. Schneider & Co.*, 21 C.C.P.A. (Customs) 352, T.D. 46882, was very similar to that in *United States* v. *Harding Co.*, *supra*, and we do not consider that it has any application to the case at bar.

We find no error in the decision of the Customs Court and its judgment is *affirmed*.